IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARY JANE SUGGS,
    Plaintiff,
v.                                    Civil Case No. 3:15-cv-00396-JAG

M & T BANK,
    Defendant.

## OPINION

Mary Jane Suggs lost her home to foreclosure in June 2013. To avoid eviction, she sued in state court with the help of a lawyer, and then sued in this Court with the help of the internet. Through her downloaded complaint, Suggs asserts ten causes of action against three defendants. Two defendants escaped the case because Suggs did not serve them as required by the applicable rules. The remaining defendant, M&T Bank ("M&T"), has moved to dismiss the case. Because her complaint contains few facts, many legal conclusions, and misguided legal theories, the Court will grant the motion and dismiss the case.

## I. STANDARD OF REVIEW

The Federal Rules of Civil Procedure require a plaintiff's complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In cases where the plaintiff appears pro se, courts do not expect the pro se plaintiff to frame legal issues with the clarity and precision expected from lawyers. Accordingly, courts construe pro se complaints liberally. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) This principle of liberal construction, however, has its limits. *Id.* Courts do not need to discern the unexpressed intent of the plaintiff or to conjure up issues on the plaintiff's behalf. *See Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006); *Beaudett*, 775 F.2d at 1276.

M&T has moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion gauges the sufficiency of a complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016). Accordingly, in evaluating such a motion, courts typically focus only on the complaint, documents attached to the complaint, and documents explicitly incorporated into the complaint by reference. *Id.* at 166. In appropriate cases, however, courts may also (1) take judicial notice of public records, such as state court records, and (2) consider documents submitted by the movant if the documents are integral to the complaint and indisputably authentic. *Id.*; *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). When considering the complaint itself, courts must accept all allegations as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Considering the facts gleaned from these principles, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient facts to state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 (2007)). In motions where the defendant raises an affirmative defense for its misconduct, courts may rule on the affirmative defense at this stage only where the necessary facts appear on the face of the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

## II. **BACKGROUND**

In January 2001, Suggs obtained a mortgage loan from Mortgage Amenities Corporation ("MAC") secured by her home. The parties executed a Note and a Deed of Trust. The Deed of Trust permits the lender to foreclose on the property if the borrower goes into default.[1] MAC assigned the Note to M&T.

Later in 2001, after the mortgage closing, Suggs's mortgage went through the securitization process. Securitization is the process of converting assets—typically a group of illiquid assets, such as mortgages—into negotiable securities for resale in the financial market. *See* SECURITIZE, BLACK'S LAW DICTIONARY (10th ed. 2014). Securitization agreements between the parties to the securitization process govern the transaction. According to Suggs, her loan became part of the Ginnie Mae REMIC Trust 2001-10, for which Ginnie Mae served as trustee.[2]

At some point, Suggs fell behind on mortgage payments and went into default. M&T appointed Surety Trustees, LLC ("Surety Trustees"), as substitute trustee of the Deed of Trust and instructed Surety Trustees to foreclose on the home. In June 2013, Surety Trustees conducted a foreclosure proceeding, at which it sold the home to M&T. Surety Trustee then conveyed title of the home to M&T.

In May 2014, M&T filed an action in state court seeking to evict Suggs (the "Eviction Action"). Suggs hired a lawyer who, in October 2014, filed a complaint against M&T seeking to rescind the foreclosure for failure to meet all the necessary requirements prior to foreclosure (the "Foreclosure Action"). In December 2014, counsel for Suggs and M&T signed an Agreed Final

---

[1] The Deed of Trust also establishes Virginia law as the governing state law. The complaint mentions New York law in some of the counts, but the Court does not see why New York law would apply to this dispute. Presumably, the inclusion of New York law stems from the fact that Suggs likely downloaded her complaint from the internet. *See infra* note 4.

[2] Ginnie Mae is another name for the Government National Mortgage Association.

3

Order in the Eviction Action in which the M&T agreed not to evict Suggs until after the parties resolved the Foreclosure Action. Suggs alleges that her lawyer signed this Order without her consent. Displeased, Suggs got rid of her lawyer. In September 2016, the state court dismissed the Foreclosure Action. Suggs has appealed this dismissal.

In July 2015, Suggs filed this case against MAC, M&T, and Ginnie Mae (collectively, the "Defendants"). Suggs failed to serve MAC or Ginnie Mae, so after multiple warnings, the Court dismissed these two defendants from the case. M&T has filed a motion to dismiss.

### III. <u>DISCUSSION</u>

Suggs asserts ten claims against the Defendants[3]: (I) lack of standing to foreclose; (II) fraud in the concealment; (III) fraud in the inducement; (IV) intentional infliction of emotional distress; (V) quiet title; (VI) slander of title; (VII) declaratory relief; (VIII) violation of the Truth in Lending Act ("TILA") and the Home Ownership and Equity Protection Act ("HOEPA"); (IX) violation of the Real Estate Settlement Procedures Act ("RESPA"); and (X) rescission. Suggs seemingly downloaded this complaint from the internet[4] and filled in the blanks with the information about her property and the entities involved with her mortgage.

M&T has moved to dismiss the case. It first argues that res judicata bars this case. If a court has issued a final judgment on the merits, res judicata bars the same parties from bringing another action on claims arising from the same conduct that the parties litigated in the first action. *Raley v. Haider*, 286 Va. 164, 170, 747 S.E.2d 812, 815 (2013). M&T argues that the

---

[3] The Court uses this term because Suggs does not distinguish which claims she brings against which defendants. Importantly, M&T is the only defendant left in this case, so while Suggs brings her case against the Defendants, the Court must focus on the facts related to the actions of M&T.

[4] *Expert Quiet Title Lawsuit. Turn-Key Litigation Package to Sue Your Lender and Stop Foreclosure.*, CERTIFIED FORENSIC LOAN AUDITORS, LLC, http://www.certifiedforensicloanauditors.com/pdfs/sample-complaint-package/Complaint-Petition.pdf (last visited January 12, 2017).

4

Agreed Final Order in the Eviction Action should operate to bar this case. The Court will not decide the motion on this ground, as it seems dubious that the agreement to let the Foreclosure Action dictate the outcome of the Eviction Action qualifies as a final judgment on the merits, especially where the Foreclosure Action is on appeal. Additionally, Suggs alleges that she did not consent to her lawyer signing the Agreed Final Order on her behalf. Accordingly, the Court turns to M&T's alternative arguments, that all of the counts fail to state claims on which the Court could grant relief.

### *A. Lack of "Standing" to Foreclose*

In Count I, Suggs alleges that the Defendants lacked "standing" to foreclose on her home because of various aspects of the securitization of her mortgage. She asserts that the Defendants did not comply with the securitization agreements, (Compl. ¶ 56), that the securitization impermissibly "split" the Deed of Trust from the Note, (Compl. ¶ 61), and that the Defendants could not "show the note"[5] because of the transfers involved in the securitization, (Compl. ¶ 62).

As an initial matter of law, securitization does not relieve a borrower of her mortgage obligations (e.g., paying the mortgage) or extinguish a lender's right to foreclose on a secured property. *Jesse v. Wells Fargo Home Mortg.*, 882 F. Supp. 2d 877, 880 (E.D. Va. 2012). Further, individual borrowers cannot challenge violations of securitization agreements because the individual borrower is not a party to or third-party beneficiary of such agreements. *Webb v. Equifirst Corp.*, No. 7:15-cv-00413, 2016 WL 1274618, at *6 (W.D. Va. Mar. 31, 2016). Thus, any claims based on these theories fail.

Turning to Virginia law, as a non-judicial foreclosure state, "show me the note" claims—where borrowers request the physical note with wet-ink signatures—routinely fail. *See Gallant*

---

[5] Suggs also raises this issue in her opposition to M&T's motion to dismiss.

*v. Deutsche Bank Nat'l Trust Co.*, 766 F. Supp. 2d 714, 720–21 (W.D. Va. 2011). Similarly, courts consistently reject theories that "splitting" the note and deed of trust renders assignments and subsequent foreclosures invalid. *See Wolf v. Fed. Nat'l. Mortg. Ass'n*, 830 F. Supp. 2d 153, 162–63 (W.D. Va. 2011). Because the law does not support the theories on which Suggs bases Count I, the Court must dismiss it.

### *B. Fraud*

In Counts II and III, Suggs alleges that the Defendants committed fraud when they (1) concealed the fact that they securitized the loan, (Compl. ¶ 67), and (2) misrepresented that they could foreclose on her home, (Compl. ¶ 76). According to Suggs, these fraudulent acts induced Suggs to enter into her mortgage.

To establish fraud in Virginia, a plaintiff must show that the defendant intentionally and knowingly made a false representation of a material fact with intent to mislead the plaintiff, and that the plaintiff's reliance on the false representation resulted in damages. *Bryant v. Peckinpaugh*, 241 Va. 172, 175, 400 S.E.2d 201, 203 (1991). Additionally, under the Federal Rule of Civil Procedure 9(b), a plaintiff must state the circumstances constituting fraud with particularity. These "circumstances" include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

In this case, Suggs fails to state a claim for fraud for multiple reasons. First, the failure to inform Suggs that some entity may securitize her mortgage is not material because securitization of a mortgage does not affect the terms and obligations of the underlying mortgage. Second, the representation that M&T could foreclose on her home is not false. Third, the timing of events is

6

off. The securitization of Suggs's mortgage and the foreclosure of her home happened after Suggs entered into the mortgage, so how these representations induced her to enter into the mortgage originally makes little sense. Finally, Suggs does not provide any particular facts about which of the Defendants made what misrepresentations when. For all these reasons, Suggs fails to state a claim for fraud.

### C. *Intentional Infliction of Emotional Distress*

In Count IV, Suggs asserts a claim for intentional infliction of emotional distress based on the Defendants conduct in wrongfully foreclosing on her home.[6] She claims the conduct was (1) outrageous and extreme, (2) undertaken with the intent to inflict emotional distress on Suggs, and (3) the cause of Suggs's lack of sleep, lack of appetite, anxiety, and severe depression.

In Virginia, to state a claim for intentional infliction of emotional distress, the plaintiff must show that the defendant intentionally or recklessly engaged in outrageous conduct that resulted in severe emotional distress. *Almy v. Grisham*, 273 Va. 68, 77, 639 S.E.2d 182, 186 (2007). In other words, this sort of claim requires the extremes—*outrageous* conduct and *severe* distress. Evaluating conduct, courts have found liability for such a claim "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White*, 241 Va. 23, 27, 400 S.E.2d 160, 162 (1991).

In cases about foreclosure, courts have overwhelmingly held that foreclosure on a home does not support an intentional infliction of emotional distress claim. *See Webb*, 2016 WL 1274618, at *10 (collecting cases). As a court confronting the same fill-in-the-blanks complaint recently held, "[w]hile undergoing foreclosure on one's residence is understandably upsetting,

---

[6] Suggs describes the conduct as "fraudulently attempting to foreclose or claiming the right to foreclose on a property which they have no right, title, or interest." (Compl. ¶ 87.)

foreclosure is a legal remedy available to the lender under the law and under the terms of the documents the [borrower] signed." *Id.*

In this case, as previously discussed, Suggs has not stated a claim that M&T wrongfully foreclosed on her home. Instead, the facts show that M&T foreclosed on Suggs's home because she did not pay her mortgage, an action that M&T could take under the terms of the Deed of Trust. Accordingly, this conduct does not rise to the level of outrageous or extreme. The Court grants the motion to dismiss Count IV.

### D. Title-Related Claims

In Counts V, VI, and VII, Suggs asserts three different causes of actions related to the title to her home based on her theories regarding the effects of mortgage securitization. For the reasons discussed above, *see supra* Part III.A, these theories do not find support in the law and do not entitle Suggs to relief. Each cause of action also fails when considering the facts of this case.

In Count V, Suggs alleges that the Defendants slandered her title when they published various documents surrounding the foreclosure, including notice of default, notice of trustee's sale, and trustee's deed. A slander of title claim involves the untruthful disparagement of a plaintiff's property, such as recording a false or fraudulent assignment. *Lomah Elec. Targetry, Inc. v. ATA Training Aids Australian Party Ltd.*, 828 F.2d 1021, 1023 (4th Cir. 1987). In this case, however, neither M&T nor the other named defendants published the documents listed in Suggs's complaint, Surety Trustee did. Accordingly, Suggs cannot plausibly state a claim that M&T slandered her title.

In Count VI, Suggs seeks to quiet title. In Virginia, to succeed in a quiet title action, a plaintiff must show a superior title to the property. *Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d

689, 700 (E.D. Va. 2010). A plaintiff cannot have superior interest to the property, however, when she has not fully satisfied her obligation to pay debt on the property. *Id.* Here, Suggs cannot show superior interest in the property because she has admitted to falling behind on her mortgage payments. Further, she does not assert that she has satisfied the obligations of her mortgage, precluding her action to quiet title.

Finally, in Count VII, Suggs seeks a declaratory judgment regarding the parties' rights and interest in the home. In the home foreclosure context, however, declaratory relief is not appropriate after the foreclosure has occurred. *Tapia*, 718 F. Supp. 2d at 695–96. The foreclosure in this case occurred in 2013, rendering declaratory relief inappropriate.

### E. Violation of the TILA[7]

In Count VIII, Suggs asserts that the defendants violated the TILA by failing to provide the accurate material disclosures that the statute requires. Congress passed the TILA to assure a meaningful disclosure of credit terms to avoid the uninformed use of credit by consumers. 15 U.S.C. § 1601(a). The TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). Suggs cites to no law, nor can the Court find any, that TILA requires lenders to disclosure that they may securitize the mortgage.

In this case, Suggs does not specify what provision of the TILA the Defendants allegedly violated, and does not specify which of the named Defendants violated what. The claim could

---

[7] Suggs also alleges that the defendants violated the HOEPA. In 1994, Congress passed the HOEPA as an amendment to the TILA to address abusive practices in refinances and closed-end home equity loans with high interest rates or high fees. HOEPA.ORG, http://hoepa.org/hoepa-lender-compliance-guide/ (last visited Jan. 12, 2017). Suggs does not specify any violation of the HOEPA, presumably because the fill-in-the-blanks complaint does not take into account that an individual plaintiff has not refinanced her mortgage or taken out a home equity loan.

fail for that reason alone. *See* Fed. R. Civ. P. 8(a)(2). Nevertheless, any violation would have occurred when the loan originated in January 2001.[8] Accordingly, Suggs probably brings this claim against MAC as the originating lender, meaning she does not state a claim against M&T. Regardless, a plaintiff must bring an action for violation of the TILA within one or three years of the violation, depending on the specific violation. 15 U.S.C. § 1640(e). This deadline has long passed.[9] Suggs, therefore, cannot state a TILA claim upon which the Court could grant relief.

### *F. Violation of RESPA*

In Count IX, Suggs asserts that the Defendants violated RESPA "because the payments between the Defendants were misleading and designed to create a windfall." (Compl. ¶ 137.) Congress enacted RESPA to enable consumers to better understand the home purchase and settlement process and, where possible, to bring about a reduction in settlement costs. *See* 12 U.S.C. § 2601.

Like her claim under the TILA, Suggs does not specify what provision of RESPA the defendants allegedly violated, and does not specify which of the named Defendants violated what. The claim could fail for this reason alone. *See* Fed. R. Civ. P. 8(a)(2). Suggs's only assertion about payments between the Defendants may refer to the prohibition against kickbacks and unearned fees found in 12 U.S.C. § 2607.[10] This section, however, only prohibits such

---

[8] *See, e.g., Vera v. Olympia W. Mortg. Grp., LLC*, 861 F. Supp. 2d 700, 700 (E.D. Va. 2011) (calculating the statute of limitations from the date of closing of the loan).
[9] In her complaint, Suggs alleges in conclusory fashion that any the statutes of limitations "were tolled due to Defendants' failure to effectively provide the required disclosures and notices." (Compl. ¶ 125.) This assertion makes little sense because a violation of the TILA triggers, not tolls, the statute of limitations. To the extent Suggs asserts equitable tolling, she does not meet the standard to justify such relief. *See Burkhead v. Wachovia Home Mortg.*, No. 3:12-CV-00832-JAG, 2013 WL 2156472, at *5, *7 (E.D. Va. May 17, 2013).
[10] RESPA also establishes a cause of action for a lender's failure to respond to a borrower's written request for information related to the servicing of the loan. 12 U.S.C. § 2605(e); 2614.

payments related to the real estate settlement. Payments made related to subsequent assignments[11] or securitization are not subject to this section. *See* 12 U.S.C. § 2602(3) (defining "settlement services"). Even if such payments were subject to § 2607, however, a plaintiff must bring an action within one year of the violation. *Id.* § 2614. Because any violation would have occurred when the loan originated in January 2001, RESPA's time limits would bar a claim.

### *G. Rescission*

Finally, in Count X, Suggs asks for rescission of her mortgage based on the theories and claims listed in her other counts. This claim fails because each of the predicate claims fail for the reasons stated above. To the extent Suggs bases this claim on a violation of the TILA, the right to rescission under the TILA expires three years after the date of consummation of the transaction. 15 U.S.C. § 1635(f). Suggs did not bring her claim or give written notice asserting her right to rescission[12] until well after the three-year period had passed. Finally, "the remedy of unconditional rescission is inappropriate where the plaintiff is unable to tender the loan proceeds." *Webb*, 2016 WL , at *11 (citing *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007) (quotation marks and alterations omitted). Suggs has not asserted that she could tender the loan proceeds. Accordingly, the Court dismisses Count X.

---

In her opposition, Suggs refers to requests she sent to M&T, but none of these relate to servicing of the loan.

[11] In 12 U.S.C. § 2605(a)-(c), RESPA establishes a cause of action for failure to notify the borrower about a transfer of loan servicing at the time of the transfer. Suggs does not allege that the Defendants did not send notice when MAC assigned her note to M&T.

[12] *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 276–77 (4th Cir. 2012).

## IV. CONCLUSION

For the reasons stated, the Court grants M&T's motion to dismiss.

The Court will issue an appropriate order.

Let the Clerk send a copy of this Opinion to the pro se plaintiff and to all counsel of record.

Date: January 18, 2017
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge